Your honors, good morning. I'm Clayton E. Kaye. I represent the appellate, Arthur Machado. Mr. Machado has raised four points on appeal. I will expedite my presentation and discuss two of those issues, two issues which I feel are critical in my presentation. The first point is that the trial court committed error when it excluded evidence of the statements and the actions of a William Lindsay who was the head of operations of the Marine Corps Community Service Department. The second point that I will discuss is that the trial court excluded evidence that white managers of the Marine Corps Community Service Department committed misconduct of comparable seriousness as did the appellate, but these white managers, unlike the appellate, was not disciplined by their common supervisor, John Nishida. On the first point, it is undisputed that William Lindsay was the head of the department from 1995 to 1999, that during his tenure as the designated head of the department, he made a number of race-based statements and took a number of employment actions which targeted Asian Pacific Islanders managers. In 1999, Colonel William Torek became the head of the department, but Mr. Lindsay was still in the chain of command, so to speak. He continued, Mr. Lindsay continued to serve as the head of operations of the department, being designated as the executive officer of Colonel Torek. Now, when we come to the adverse action itself, the proposed termination, which ultimately ended the termination, Mr. Lindsay... I'm sorry. On the issue of whether Mr. Lindsay... Can you hear me now, Your Honor? A little better. Maybe we can just turn it up just a stick. I don't want to be shouting at Your Honor. I've been hollered at a lot. Don't worry about that. On the issue of whether Mr. Lindsay had a role in the termination of Mr. Machado, Mr. Lindsay stated that he did not. He stated he did not because he had no knowledge of the alleged misconduct. He had no knowledge of the investigation into that misconduct. And he had no knowledge of the disciplinary action that was the result of the investigation. In other words, he said, despite the fact that he's the head of operations, I had no knowledge of it. Therefore, I didn't participate. However, his statement, his testimony, is contradicted by the evidence that was presented to the trial court and by the testimony of his superior, Colonel Torek, and the subordinate officer, John Machado. Exhibits 119 and 120, which are in the excerpts pages five to eight, are collection letters prepared by Mr. Lindsay and sent to the holder of the checking account, which the bad checks were written. Those are written by him. We further have email that was prepared by John Machado, directed to Colonel Torek and other senior managers, including William Lindsay, discussing the progress of the investigation into the misconduct by John Machado. Mr. Lindsay received copies of those email in those. And that's the emails took place between April 14, 2000 and April 17, 2000, are contained in page nine through 11 of the excerpts of the record before your honors. Now, I suppose some of these things might indicate that Lindsay knew of the investigation or knew that it was going on, but would establish that he had any role in the decision to terminate. Yes, because, well, if but for the fact what he claimed is if he testified hypothetically that I knew about it, but I didn't participate, then it's different sort of fact pattern. But what you have is Mr. Lindsay saying I didn't know about it and therefore I didn't participate. So you're saying there's a credibility problem. There's a credibility problem, not just at Mr. Lindsay's level, but also at the other two levels in terms of Colonel Torek. He testified that as the head of the department, he made the decision to terminate and that he instructed Yvonne Colomero, the personnel manager, to carry out his instructions of termination. But you have Yvonne Colomero testifying that there was no conversation between she and Colonel Torek. And that, in fact, the decision to terminate was made at a meeting attended by herself, Kenneth Lum and John Nishida, and they made the decision. And there was no input whatsoever from Colonel Torek. And then you have John Nishida giving you a third set of facts, basically that he made the decision to terminate. Counsel, this case is a rather odd and puzzling case for me. We have a jury determination and we also have a bench trial and the judge's determination. Now, in the jury trial, they found that there was no discrimination. And I could assume that maybe you were right that some of this other information should have come in. And on that issue, there might be a real problem. But they did not get to the next question, which was propounded to them as to whether he would have been fired anyway. They just didn't answer that because they found there was no discrimination. Then you go to the judge's conclusions and finds that he would have been fired anyway. That whether there was discrimination or not, his conduct was such that he could have been fired and should have been fired. So, do we just, is there anything about the evidence which came in, or did not come in, which should have affected her decision when she said that this conduct was such that he would have been fired anyway and that there wasn't any type of cover up or anything like that by the employer. So how do we how do we get around that? There's multiple answers to your Honor's questions, if I may. As far as the judge's ruling, the judge only concerned himself, as was his discretion, with the age discrimination claim. Yes. Did not address the issue of the race and national origin discrimination. Yes. And we're not disputing that. But in the jury verdict form, the question is posed, was there a discharge? Because that was one of the issues on a trial. Was Mr. Machado constructively discharged to jury found in the affirmative on the jury verdict form? Before they can answer the question of whether he would have been fired or not, the jury is instructed by the jury form, verdict form, to answer the question, has there been proof of discrimination by proponents of evidence? If there is no finding of discrimination, then the jury is instructed not to go further and answer the question. That's all very clear, but what do we do with the fact that the judge has made a very clear finding? And no matter what, his conduct was such that the employer would have fired him if he was. Yes. The judge's finding on the age claim is not binding on the jury's verdict on the race claim. What we are claiming as to the race claim is that the judge committed reversible error by not allowing these racial slurs to be admitted and offers an evidence that other white managers who committed misconduct of similar gravity were not disciplined by the same supervisory chain. And that is so to as I understand, Your Honor, is that because the Honor's question seems to be saying, well, because the judge made the determination on the age claim, that should be binding on the jury on the race and national origin claim. And that is not. Well, we would have even a more puzzling situation if the jury had gotten to the question and said that, no, he wouldn't have been fired. And then the judge hears the age discrimination case and says, yes, he would have been fired, he should have been fired. Then what would we do with that? I think under the applicable rule, Your Honor, given that it's a jury finding, that would be binding on the trial court in terms of the race and national origin claim. The trial judge being the finder of fact in the age claim only by statutory, by statutory construction applicable only to federal employees. The judge said, well, he would have been fired anyway. And the judge is considering the age discrimination claim. So the guy, he's gone. There's only one person. I believe it. So what are the damages on the other then? What would they be? Well, I think it's synonymous to the issue was before jury trials were allowed in Title VII, you had claims under 1981, race-based claims, which were jury-tried, and you had judge-based claims that were Title VII. In those instances, the appeals court were pretty uniform in holding that the 1981 verdict by the jury was binding. If there was a finding of discrimination, it was binding on the trial court as to the outcome for the trial itself. I suppose if there had been a favorable determination for your client on the jury trial, you would have dismissed the age discrimination claim and thus not proceed to the trial? I can't. It's hard to look back and determine, make that determination. The problem we had is that basically the pivotal issue of our case was denied us. The pivotal issue of our case was that William. William Lindsay made the decision to terminate. He or he influenced that decision to terminate. And he made all these statements that showed his race bias against Asian Pacific Islanders. In addition to that, he took a number of employment actions against other Asian Pacific Islander managers and other white managers who did commit similar acts of misconduct of similar nature of gravity were not disciplined. That evidence didn't come in. So I guess it seemed to me that those evidences of misconduct were not as serious as those of your client. I think when you obviously in any sort of fact pattern, you're going to have different managers. And I think it's undisputed that the persons that we're talking about, the similar situated are managers themselves. And as was stated in the archivist versus your entire case, they set forth the appropriate test in determining whether a manager or employee co-worker is similarly situated. And the test that was basically threefold is the employee under the same supervisor as the other employees. In this case, John Nishida was the common supervisor. Are the employees held to the same standard of conduct as the employee in question? In this case, we have a uniform code of conduct applicable to all Marine Corps civilian managers. And third, are the did the employee engage in the same sort of conduct without such differential circumstances as would distinguish a different treatment? McDonald Douglas ruling on that was a misconduct case. The court held that the proper test was serious or comparable seriousness. And in this case, what you have is Bob Porter. He's a manager of the temporary lodging facility. He maintained the facility in an unsanitary condition. It couldn't be used. He refused to meet his performance standards. When he was told to go to training to upgrade his performance, he refused. He was involved in two automobile accidents involving government cars. He did not disclose those accidents as he was supposed to. And on a second investigation, he was not truthful to the investigator, to the adjuster investigating the accident. Mr. Porter is white. Mr. Porter was not disciplined. Donna Williams was the enlisted man club manager. She made unauthorized purchases for her own benefit. She was not disciplined at all. She's white. And then you have Lisa Thomas. She was also a club manager. She was found to have been engaging in sex acts at the club premises after hours. And she was discovered by security. Ms. Thomas is white. Ms. Thomas was not disciplined. I think the core of this case comes down to the application of Rule 401 of the Rules of Evidence. That rule, as cited in the Robinson versus Runyon case, which we cited on our brief, is that evidence having any tendency to make the existence of any fact that is of consequence to the determination. Of the action, more probable or less probable than it would without the evidence. So what you have is this evidence that was excluded by the trial court was clearly relevant, was clearly probative to the claim of race and national origin bias. And what I would suggest is that the trial court decided and the Robinson case basically states that once it is found to be relevant, neither the appellate nor the trial court should make a ruling based upon the sufficiency or the weight of that evidence. And I would suggest that that is what the trial court did in the incident case. Unless your honors have any further questions, I'd like to reserve my remaining time. All right, very well. Thank you. Good morning, Judge Canby, Judge Pregerson, Judge Fletcher. To please the court, Harry E. representing Secretary Johnson in this matter. I'd like to begin, your honors, by addressing the appellate's two points on appeal. By stating that the appellate has not proven that there was error in exclusion of any testimony with regards to Mr. Lindsay. There's a definite disconnect here, your honors, between what Mr. Lindsay's role at all in the decision of Mr. Machado to retire versus facing a recommendation from a three-member panel not including Mr. Lindsay. In fact, not reporting to Mr. Lindsay on their decision. Their recommendation that he be terminated and Lieutenant Colonel Torek's authority to accept that recommendation and then to follow through and terminate Mr. Machado. Total disconnect, your honors, between Mr. Lindsay's role in this entire matter and why that evidence is in fact prejudicial and unfair to the government in this case and should have been excluded and was excluded under Rule 403. Well, in the discrimination case, isn't it relevant if the top supervisor is racist and kind of spreads that atmosphere through the office? It is, your honor. Would that be relevant? It would be relevant, your honor. But the specific facts in this case are that there's no temporal proximity between the alleged comments of Mr. Lindsay. There's no authority for him to influence this three-panel board that made the recommendation for termination on Mr. Machado. And on top of that, there's independent, clear evidence that Mr. Machado violated the rules and regulations of his job in cashing these checks. Oh, that's very clear. That is serious misconduct. That's not what's going on. So the argument basically comes down to, on Mr. Lindsay, he had no role in this. He had – there's no showing in the record or support for the arguments being made by the panel today that he had any role in this or that he even attempted to influence this three-panel in their recommendation of termination. That recommendation is then further distanced from the claim of discrimination in this case because it was never acted upon. It was never reported to Lieutenant Colonel Clark because Mr. Machado retired two days after he received informal word that he was – that the termination was going to be recommended. As to the second point on appeal, your honors. Your adversary says, well, Lindsay said that he didn't know anything about this, and there's evidence that he did know something about this, and that we should therefore disregard his statements that he didn't have anything to do with this. Well, and I think that was your honors' point in asking that question. And that is, does that knowledge on the part of Mr. Lindsay, knowing about the situation, knowing about the fraud and the check cashing, does that impute to his trying to influence this three-panel? And it doesn't, your honors. There's no showing of that in the record at all. Well, it shows that Lindsay isn't being truthful when he says that he didn't know anything about this, and that he's not being truthful in that. Would a prior fact be entitled to assume he's not being truthful about other things, too? Well, I was a trial counsel in this case, your honor, but I'm very familiar with this case, and I'm very familiar with the record in this case. And I believe what the record says is he was very truthful about his statements, about not knowing anything about the termination recommendation by the panel. I don't think there was any question that upped the chain. We wouldn't hide that, your honors. It's in the emails. He was CC'd on these emails. But what was his role after receipt of that information? None whatsoever. As to the second point, second point on appeals, your honor, the trial court ruled specifically that Mr. Porter's testimony, or testimony about the other Caucasian managers was not relevant, and particularly in Mr. Porter's case wasn't relevant, because that wasn't the purpose throughout the pretrial and up until trial, that plaintiffs said they were going to submit Mr. Porter's testimony on. They said Mr. Porter was going to show that he was similarly situated because he was an elderly manager, and that he was going to be testifying that he experienced discrimination. Total turnaround at trial. He now wants to submit Mr. Porter's testimony saying that Mr. Porter was treated differently. Mr. Porter was given preferential treatment. Judge properly ruled that's not the purpose. You said he was going to testify to you. You can't try this case by ambush, counsel. And so he properly excluded that evidence. I think that there is not only substantial legal basis for that ruling, your honor, but factual basis. Again, temporal proximity. Temporal proximity to the claims being made about the disparate treatment of white managers in this case is so significant that the court had to rule that way. One incident was four years old. Another incident was two years old. The closest incident, which actually came in, I think, is actually misquoted by an appellant here, is that Mrs. Laguerre, who was the manager of the enlisted men's club, was an Asian Pacific American manager. She was forced, she wasn't forced to retire. She retired on her own after she received the citation that her facility was unsanitary. It was told to her that she would receive a reprimand, not a notice of termination, but a reprimand. And rather than receive that reprimand, she decided to retire. That's the only one that's even close, temporarily, to Mr. Machado's retirement in this case. And that's what occurred. In addressing the reply brief that was filed in this case, Your Honors, as to the first point the appellant raises, that Mr. Machado informed his media supervisor as soon as he knew about the loss, that is not what the cited testimony in the reply brief says. The cited testimony in the reply brief says, if the court goes through the trial transcript, it says he told his supervisor about the check cashing. And then, in fact, we are led to believe, in reading this testimony, that Mr. Nishida had the understanding Mr. Machado was going to try to have the person who wrote these checks make good on them. At that point, it was not a loss. The government, not trying to mislead any court, Your Honor, in the answering brief, cites to page 10 of our brief, cites to the record at page 54 and 57, and that is a contemporaneous written statement given by Mr. Machado to the investigator around the time of the incident. And at page 56, it says, and this is Mr. Machado's statement, I didn't inform Mr. Nishida about these checks because I was scared. I violated my responsibilities as a manager because I thought I was helping a friend. I didn't expect these checks to come back from the bank as dishonored. He goes on to say, yes, I'm responsible for these controls. I admit cashing the checks based on my relationship with Alika, and I acknowledge I didn't follow proper procedures. That, Your Honor, is the contention of the government, that he didn't report the loss, and he acknowledged he didn't report the loss. That's the second point in the reply brief, that the racial background of the three-panel recommendation board should be ignored is not the salient point that we raise that for in our answering brief. Although the racial makeup of the panel deciding adverse employment action against the plaintiff is cited as a relevant factor before the lower court, it was a minor point when weighed against the other factors for which we presented the importance of this three-panel as a factor. First is the independence of the panel. As I stated earlier, their decision was not influenced, certainly by Mr. Lindsey, and certainly wasn't influenced by Lieutenant Colonel Turek, although he was the ultimate decision-maker who they were making their recommendation to. Second, their decision was unanimous. That's why we cited it, Your Honors. There were three people sitting on this panel, two of whom weren't directly supervising Mr. Machado, and they unanimously decided that the infraction was so severe, termination should be recommended. Lieutenant Colonel Turek and Mr. Lindsey's lack of knowledge of the panel's recommendation, even after they decided termination, is another reason why we cite it to the panel. Third, the appellant argues that the recent holding in Obrey v. Johnson would require reversal and remand in this case. And we cite Obrey v. Johnson with regards to the analysis of statistical information. I think that Obrey v. Johnson, correctly cited, Your Honors, simply states and restates what this court has decided in clarifying the standard of harmless error. And again, I would stress that there's no error in this case, harmless or otherwise, by the trial court. But I think it bears stating, Your Honor, that the Obrey case does not mandate remand and reversal in this case. If I can quote from page 701 of that decision, thus when reviewing the effect of erroneous evidentiary rulings, we will begin with the presumption of prejudice. That presumption can be rebutted by showing that it's more probable than not that the jury would have reached the same verdict if the evidence had been admitted. And it cites to Haddad at 725 seconds at 1459. That's the correct standard, Your Honors. And I would submit, Your Honors, that the record is completely in support of the government's position, even if the court were to go that far and find that there was error in this case, that, in fact, it was harmless error. And that presumption of prejudice to the plaintiff in this case has been rebutted. You know, I missed a sentence that after you cited Obrey, you said something, and I just missed that part. Do you remember what it was? Yes, Your Honor. I said we cited Obrey for a different purpose. We cited Obrey in support of our position that certain evidence that was excluded, and it wasn't argued by the appellant in this case, but we chose to argue it because even though the appellant has only cited two issues in his opening brief, he comes before this court and argues that he is raised for. So we did argue that mystery issue in our brief on the statistical information, and we cite Obrey in support of our position on the exclusion of that evidence. And that's the only reason I mentioned Obrey. And how is that presumption rebutted? The presumption that is raised in the Obrey case is rebutted, Your Honor, by the clear showing that Mr. Lindsay had nothing to do with this decision, had nothing to do with influencing the panel in this decision, that the infractions for which Mr. Machado has been charged with have never been refuted. In fact, if anything, the statement that I cited to Your Honors is a clear admission that he violated the rules and regulations. Counsel, if we were to find that it was error to exclude this evidence, what effect would that have on the judge's finding that this guy would have been fired anyway for his misconduct? And that's what I'd like to also correct, Your Honor. I think that it was not a finding by the jury in this case based on the jury instructions. I'm asking you about the judge's finding in the bench trial. Yes, Your Honor. And it would have no effect on the judge's finding, Your Honor. I think it's clear that Judge Chang in this case decided that the evidence that was argued before him on the pretrial motions with regards to Mr. Lindsay, with regards to the other non-Asian Pacific American supervisors, he made clear findings about the relevance of that information. He made clear findings about the prejudicial effect of that information. And we argue that in addition to that, there is no temporal proximity which allows the plaintiff in this case to even raise those claims. Now, if this evidence should have come in, should the jury have another quack at this case and be required to answer the – if they were then to find, yes, there was discrimination, would they then have an opportunity to determine whether he should have been fired in any event? This is kind of a messy case in my view. And it's – that was my earlier point with regards to my comment regarding the jury verdict in this case. I believe that the court looks at what the jury answered in determining whether or not Mr. Machado would have been discharged. But they might have – they never answered that question. But if this evidence should have been admitted, then perhaps they might have come out differently on the discrimination issue. And then they would have had to answer this next question. I think the court, in examining what the plaintiff is putting forward in this case, as similarly situated individuals – No, I'm saying that evidence should have. This is hypothetical. That evidence should have come in. Would the jury reach the same decision, Your Honor? I believe it would. I believe that the evidence is clearly so far distant in time and in relevance to the claim of discrimination here that the plaintiff would not have prevailed. Let's assume that they heard this evidence and they did find discrimination. Then should they have an opportunity to answer the last question, which was would he have been fired anyway? In this case, Your Honor, with Mr. Machado deciding to retire and not being discharged and not resigning but retiring, I don't think the jury would reach that question. I think they would decide again. He chose the better of two choices in retiring. They did find that he was constructively discharged, didn't they? I believe the record will show, Your Honor, that he was – How could the jury find that he was – I think that you'll find in the record that it was a discharge, not constructive discharge. And I think that's the misconnect here, Your Honor. I think there's never been an argument of constructive discharge on the part of the plaintiff in this case. If they had, I think, Watson v. Nationwide Insurance, this Court's decision at 823 F. Second 360 in 1987 case, Judge Nelson in her decision says constructive discharge occurs when looking at the totality of circumstances a reasonable person in the employee's position would have felt that he was forced to quit because of intolerable discriminatory working conditions. Whatever he wasn't, Michael, what did the jury find on this point? I believe they found he was discharged, not constructively discharged. But they did find he was discharged. Okay. Okay, he's discharged. The jury once again looks at it and says, okay, he was discharged. And the jury looks at it again and says, well, we think now that we've seen all this additional evidence, we think there was discrimination. Then we presume they're entitled to look at the next question as, would he have been fired anyway? Nothing in the judge's earlier ruling precludes them from getting to that question. Is that correct? Correct, Your Honor. And I believe they will, a jury would find in this case, there's no pretext here, Your Honor, that this is... That's not, the question is whether he would have been fired anyway. And the basis of the firing they would find is non-pretextual and that it was a valid reason for the firing. And discrimination, if any at all, didn't play a role in this. And in fact, if you look at the record, Your Honors, any direct evidence of discrimination against Mr. Machado doesn't exist. If you look at the plaintiff's own brief in this case at page 12, the only instance of a colorable claim of discrimination that the appellant cites is that he felt he was singled out to be replaced because he overheard Mr. Lindsay say he, Mr. Machado, wasn't smart enough and it was time to replace him. That's the only thing that's even colorable with regards to discrimination against Mr. Machado. But he resigned before he was discharged. He retired. He retired, yeah. Did the jury know that? Did the jury... Know that he retired? Yes, Your Honor. I don't have any other points to make, Your Honor, if you have any other questions. Thank you. If I may, because I had the benefit of being present at the trial, I'd like to address some of the issues raised by Your Honor and raised by Mr. Yee. In the excerpts of record at pages 417, the special verdict form is attached. Yes. And it goes to 421. That issue, and it's undisputed that Mr. Machado retired after he was told that he would be fired. Yes. After he was told that if fired, he would lose all his retirement benefits. So what the issue that was before the jury was the issue of constructive discharge. And the first question that the jury was asked was, did the plaintiff prove by preponderance of the evidence that he was discharged by the defendant? It was undisputed that Mr. Machado had retired after being told he would be fired, and if fired, he would be without benefits. The answer of the jury was yes. The next question was, did the plaintiff prove by preponderance of the evidence that the defendant was motivated by his race, et cetera? And the jury answered no. And the jury was further instructed, if you answered no to question number two, skip the remaining questions, which they did. And the remaining question was, did the defendant prove by preponderance of the evidence that John Nishida, Yvonne Calamara, and Ken Lum would have decided to oppose plaintiff's termination even if race and national origin had not motivated the decision? That question was unanswered by instructions of the Court. And so if a remand is appropriate and ordered by this Court, I would submit that the jury should be permitted to answer that question, and that decision would be binding as to the race and national origin claim. As to the issue of did Mr. Machado report the incident, which was investigated in April, but did he report it to John Nishida back in February? We included excerpts of a record in which Mr. Nishida acknowledged that he met with Mr. Machado for 15, 30 minutes, that Mr. Machado brought to his attention these checks, and these checks had come back at that time $900 worth, and they had bounced. And he referred to his own notes. Now, we know from the investigation that John Nishida had knowledge of these bad checks back in February 2000. We know that the investigation did not start up until April. Three months later, April 2000, and as indicated on page 10 of the excerpts, a e-mail from Mr. Nishida to Captain Tork, to Colonel Tork and William Lindsay stated, by Mr. Nishida, we are looking at a suspension of it at least for two weeks. In this case, Your Honors, we are claiming that Mr. Machado was denied the opportunity and the jury was denied the opportunity of receiving evidence to establish that a racist manager influenced the decision to propose termination. And being denied that, additionally, the jury was denied the opportunity to look and see how other comparable situated white managers were treated when they committed acts of misconduct. I think that that is relevant. And that manager we are talking about is Lindsay. I'm sorry? Lindsay. Well, there's my argument. Do you want me to talk about Lindsay or the other managers? Under Mr. Lindsay, it's clear that as we sought to prove that white managers were treated better, but the Court excluded all such evidence. And under the holding of the Obrey case, once an error is found, the Obrey holding finds that presumption is that there was harm and prejudice by the ruling. And, therefore, it's on the burden of the beneficiary of that error to prove error and to prove the error was harmless. In this case, there has been no shame. Thank you. Thank you.
judges: B. Fletcher, Pregerson, Canby